IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

**GEORGE CARLIN,**

PLAINTIFF,

v.

**MICROSOFT CORPORATION,**
Foreign Limited Liability Company,

DEFENDANT.

CASE NO.

**COMPLAINT AND DEMAND FOR JURY TRIAL**

PLAINTIFF, GEORGE CARLIN, ("CARLIN" or "Plaintiff"), sues DEFENDANT, MICROSOFT CORPORATION, ("MICROSOFT" or "Defendant") and alleges:

**NATURE OF CLAIMS**

1. This is an action under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. 621 et seq., 29 U.S.C, 215 et seq., (ADEA); and the Florida Civil Rights Act, Chapter 760, Florida Statutes (FCRA). The action includes claims for (1) Age Discrimination in violation of the ADEA, (2) Age Discrimination in violation of the FCRA, (3) Constructive Termination in violation of the ADEA, and (4) Constructive Termination in violation of the FCRA.

## JURISDICTION AND VENUE

2. This Court has jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1337.

3. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over CARLIN's State law claims because they are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy. Moreover, CARLIN's State law claims do not raise a novel or complex issue of State law, nor do they substantially predominate over the ADEA claims.

4. CARLIN is a resident and citizen of Collier County, Florida.

5. MICROSOFT is one of the largest corporations in America and the world's largest software maker with offices and stores throughout the country including in Florida.

6. MICROSOFT is a foreign corporation and maintains its principal place of business in Redmond, Washington.

7. MICROSOFT operates, conducts, engages in, or carries on a business or business venture in Florida.

8. MICROSOFT is authorized to do business in the State of Florida.

9. MICROSOFT engages in substantial and not isolated activity within Florida.

10. At all times relevant to this Complaint, MICROSOFT was engaged in an industry affecting commerce as defined in Section 11(h) of the ADEA, 29 U.S.C.A. § 630(h).

11. CARLIN was employed by MICROSOFT in Collier County as a remote employee. All unlawful employment practices alleged to have occurred herein took place in Collier County which is within the Middle District of Florida.

12. Venue is proper in the Middle District of Florida, Fort Myers Division because a substantial part of the events or omissions giving rise to the claim occurred in the judicial district.

## COVERAGE AND ELIGIBILITY

13. At all times material hereto, MICROSOFT had 20 or more employees who worked for the company in the current or preceding calendar year, and any agent of such a person. MICROSOFT is an employer within the meaning of the ADEA and the FCRA.

## CONDITIONS PRECEDENT

14. CARLIN filed a timely Charge of Discrimination with the Florida Commission on Human Relations and the EEOC that was received on January 24, 2024.

15. The EEOC issues a Notice of Right to Sue on January 26, 2024, which was received by CARLIN on January 29, 2024. Accordingly, this action is timely filed thereafter.

16. All other conditions precedent have occurred or been performed.

## STATEMENT OF FACTS

17. CARLIN is a sixty-two-year-old male and was well over the age of forty at the time of the alleged discrimination herein and constructive termination from MICROSOFT.

18. CARLIN began working for MICROSOFT in July of 2010.

19. CARLIN worked as an Enterprise Executive.

20. CARLIN performed his assigned duties in a professional manner and was well qualified for his position.

21. CARLIN consistently met and exceeded performance goals.

22. CARLIN was often recognized for strong performance and received several pay raises throughout his employment at MICROSOFT.

23. As recently as January 13, 2023, CARLIN was recognized for exceptional performance by his prior manager, Alejandro Mainetto. Mr. Mainetto also expressed to CARLIN that CARLIN was deserving of a promotion.

24. CARLIN expressed appreciation to his manager and desire to be promoted and to ascend within the company.

25. CARLIN applied to other positions including lateral positions and promotions.

26. In or around April 2023, MICROSOFT replaced CARLIN's former manager with a woman named Jenn Goth, and Ms. Goth began to document pretextual negative performance reviews without having structured and formal discussions with CARLIN regarding his performance.

27. Jenn Goth did not follow standard procedure in her attempts to disparage CARLIN on record before Microsoft Corporation.

28. CARLIN was targeted as one of the oldest employees in his department.

29. CARLIN was nearing eligibility for age-specific employee benefits.

30. CARLIN was the target of comments regarding his age by employees of MICROSOFT including, but not limited to, comments about

   a. his retirement plans,

   b. a comment calling him an "old timer" and "boomer,"

   c. comments accusing him of having a "fixed mindset," being "left behind."

While not every comment was made by a direct superior of CARLIN, they reflected the discriminatory environment to which CARLIN was subjected.

31. One or more of CARLIN's colleagues noticed the harassment that CARLIN received, and another employee even submitted a complaint to MICROSOFT alleging that CARLIN was the victim of a hostile work environment.

32. On or about June 28, 2023, Ms. Goth attempted to have CARLIN fired by improperly directing CARLIN to act in violation of MICROSOFT's policy.

33. Ms. Goth later functionally demoted CARLIN by stripping CARLIN of the team members that he oversaw. CARLIN's team members were awarded to other significantly younger managers without backfilling CARLIN's team replacement subordinates in accordance with the standard process. Later, CARLIN was moved to another area of the company in which he had very little to no experience and was not provided the direction, instruction, and training needed to excel in this new position and in accordance with MICROSOFT's standard practice.

34. CARLIN was placed into an untenable job setting and subjecting him to uniquely rigorous conditions—treatment different than that accorded younger employees.

35. CARLIN's new position within MICROSOFT contained less subordinates and was materially less prestigious, materially less suited to CARLIN's skills and expertise, and was materially less conducive to career advancement.

36. Prior to CARLIN being transferred to this new position within MICROSOFT, CARLIN was in a position to receive a promotion and advance within the company, but this opportunity was no longer available once CARLIN was transferred.

37. This functional demotion was a perceptible adverse consequence experienced by CARLIN.

38. MICROSOFT, through its managers, engaged in a series of related acts as a part of its overall plan to force CARLIN to resign and lose out on significant age-specific employee benefits, including MICROSOFT's refusal to promote or transfer him, CARLIN's calculated transfer to a position for which he was not qualified to build a record that would justify his voluntary dismissal, loss of stock benefits, harassment on the basis of his age and other adverse working conditions.

39. The negative feedback, transfer, attempts by CARLIN's superiors to have CARLIN terminated or resign, and other discriminatory practices made additional formal applications for promotion futile, but CARLIN had made it known to his superior that he was interested in a promotion and well as applied for some transfers and promotions.

40. CARLIN would have certainly applied, requested, and otherwise pursued a promotion within MICROSOFT had it not been for the discriminatory practices of MICROSOFT.

41. A reasonable person in CARLIN's position would have felt that he or she was prevented from applying for the promotions due to the discriminatory treatment.

42. CARLIN provided MICROSOFT with a reasonable chance to end the discrimination through his cooperation with the investigation with the complaint of a hostile work environment and through his responses to his superiors' negative reviews and feedback. CARLIN further made formal requests in writing to be transferred to a team another team to escape the discriminatory treatment as well as request meetings with superiors to discuss your treatment but was shunned.

43. A reasonable person would have found that CARLIN's working conditions intolerable and that MICROSOFT either intended to force CARLIN's resignation or, at a minimum, that CARLIN's resignation was reasonably foreseeable given the conditions under which he was made to worked.

44. As a result of MICROSOFT's discriminatory treatment, CARLIN lost age-specific employee benefits including significant shares that would have vested had CARLIN not been subjected to discriminatory treatment.

45. As a result of MICROSOFT's discriminatory treatment, CARLIN was constructively discharged from his employment with MICROSOFT on July 17, 2024.

## COUNT I – AGE DISCRIMINATION IN EMPLOYMENT ACT

### (Age Discrimination in Violation of the ADEA)

46. CARLIN realleges and incorporates allegations 1-45.

47. CARLIN was an employee and MICROSOFT was his employer covered by and within the meaning of the ADEA.

48. CARLIN is a member of the protected age class (over the age of forty) under the ADEA.

49. CARLIN was well qualified for the positions he held with MICROSOFT.

50. Despite his qualifications, CARLIN suffered an adverse employment actions including, but not limited to,

   a. a hostile work environment,

   b. transfer,

   c. demotion,

   d. failure to promote.

51. A significantly younger and less qualified individuals received promotions that should have been offered to and accepted by CARLIN.

52. A significantly younger and less qualified individuals essentially replaced CARLIN once he was transferred by assuming his duties and roles.

53. MICROSOFT discriminated against CARLIN in the terms and conditions of his employment on the basis of age, in violation of the ADEA.

54. MICROSOFT engaged in unlawful employment practices in violation of the ADEA, 29 U.S.C. § 623, by demoting CARLIN because of his age.

55. MICROSOFT either knew that its conduct violated the ADEA or it showed reckless disregard for whether its conduct violated the ADEA.

56. A causal connection exists between CARLIN age and his discrimination.

57. CARLIN has suffered damages as a result of the discrimination including lost wages, salary, employment benefits, stock benefits, and other compensation and is therefore entitled to recover actual monetary losses, interest at the prevailing rate, and attorney's fees.

58. CARLIN is still suffering damages and will continue to suffer damages in the future.

59. The degree of hostility and animosity between the parties, the displacement of an innocent employee, the probability of reinstatement and promotion arousing hostility in the workplace, and the effect of the dismissal and the litigation process on CARLIN's feeling of self-worth and ability to return to

work for the MICROSOFT make reinstatement and promotion impracticable and inappropriate. Therefore, CARLIN is entitled to front pay through the date of his retirement as an alternative form of equitable relief.

60. MICROSOFT violations of the ADEA were willful therefore CARLIN is entitled to liquidated damages under 29 U.S.C. § 626(b) (incorporating and modifying as to the ADEA, 29 U.S.C.A. § 216 of the Fair Labor Standards Act).

## COUNT II – FLORIDA CIVIL RIGHTS ACT

**(Age Discrimination in Violation of Chapter 760, Florida Statutes)**

61. CARLIN realleges and incorporates allegations 1-45.

62. CARLIN was an employee and MICROSOFT was his employer covered by and within the meaning of the FCRA.

63. CARLIN is a member of the protected age class (over the age of forty) under the FCRA.

64. CARLIN was well qualified for the positions he held with MICROSOFT.

65. Despite his qualifications, CARLIN suffered an adverse employment actions including, but not limited to,

    a. a hostile work environment,

    b. transfer,

    c. demotion,

    d.  failure to promote.

66. A significantly younger and less qualified individuals received promotions that should have been offered to and accepted by CARLIN.

67. A significantly younger and less qualified individuals essentially replaced CARLIN once he was transferred by assuming his duties and roles.

68. The above acts by MICROSOFT constitute unlawful discrimination based on Plaintiff's age in violation of the Florida Civil Rights Act, Chapter 760, Florida Statutes.

69. As a direct, natural, proximate, and foreseeable result of MICROSOFT discriminatory employment practices, CARLIN has suffered damages including, but not limited to, lost wages, front pay, interest on pay, bonuses, other benefits, emotional pain and suffering, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

70. CARLIN is still suffering damages and will continue to suffer damages in the future.

## **COUNT III – AGE DISCRIMINATION IN EMPLOYMENT ACT**
### **(Constructive Discharge in Violation of the ADEA)**

71. CARLIN realleges and incorporates allegations 1-45.

72. CARLIN was an employee and MICROSOFT was his employer covered by and within the meaning of the ADEA.

73. CARLIN is a member of the protected age class (over the age of forty) under the ADEA.

74. CARLIN was well qualified for the positions he held with MICROSOFT.

75. Despite his qualifications, CARLIN suffered an adverse employment actions in the form of a constructive discharge.

76. A significantly younger and less qualified individuals essentially replaced CARLIN once he was transferred by assuming his duties and roles.

77. MICROSOFT discriminated against CARLIN in the terms and conditions of his employment on the basis of age, in violation of the ADEA.

78. MICROSOFT engaged in unlawful employment practices in violation of the ADEA, 29 U.S.C. § 623, by constructively terminating CARLIN because of his age.

79. MICROSOFT either knew that its conduct violated the ADEA or it showed reckless disregard for whether its conduct violated the ADEA.

80. A causal connection exists between CARLIN age and his discrimination.

81. CARLIN has suffered damages as a result of the discrimination including lost wages, salary, employment benefits, stock benefits, and other

compensation and is therefore entitled to recover actual monetary losses, interest at the prevailing rate, and attorney's fees.

82. CARLIN is still suffering damages and will continue to suffer damages in the future.

83. The degree of hostility and animosity between the parties, the displacement of an innocent employee, the probability of reinstatement arousing hostility in the workplace, and the effect of the dismissal and the litigation process on CARLIN's feeling of self-worth and ability to return to work for the MICROSOFT make reinstatement impracticable and inappropriate. Therefore, CARLIN is entitled to front pay through the date of his retirement as an alternative form of equitable relief.

84. MICROSOFT violations of the ADEA were willful therefore CARLIN is entitled to liquidated damages under 29 U.S.C. § 626(b) (incorporating and modifying as to the ADEA, 29 U.S.C.A. § 216 of the Fair Labor Standards Act).

## COUNT IV – FLORIDA CIVIL RIGHTS ACT

**(Age Discrimination in Violation of Chapter 760, Florida Statutes)**

85. CARLIN realleges and incorporates allegations 1-44.

86. CARLIN was an employee and MICROSOFT was his employer covered by and within the meaning of the FCRA.

87. CARLIN is a member of the protected age class (over the age of forty) under the FCRA.

88. CARLIN was well qualified for the positions he held with MICROSOFT.

89. Despite his qualifications, CARLIN suffered an adverse employment actions in the form of a constructive discharge.

90. A significantly younger and less qualified individuals essentially replaced CARLIN once he was transferred by assuming his duties and roles.

91. The above acts by MICROSOFT constitute unlawful discrimination based on Plaintiff's age in violation of the Florida Civil Rights Act, Chapter 760, Florida Statutes.

92. As a direct, natural, proximate, and foreseeable result of MICROSOFT discriminatory employment practices, CARLIN has suffered damages including, but not limited to, lost wages, front pay, interest on pay, bonuses, other benefits, emotional pain and suffering, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

93. CARLIN is still suffering damages and will continue to suffer damages in the future.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all triable issues.

## **PRAYER FOR RELIEF**

**WHEREFORE**, CARLIN respectfully requests the following relief under each count, unless otherwise specified:

a. Injunctive relief under the applicable counts set forth above, mandating MICROSOFT's obedience to the laws enumerated above and enjoining MICROSOFT from future violations of the laws enumerated above and providing other equitable relief to Plaintiff;

b. Back pay wages, salary, employment benefits, and all other compensation to which he is entitled (hereafter "back pay");

c. Front Pay as permitted by law;

d. Interest as permitted by law;

e. **As to Counts I and III under the ADEA**, liquidated damages in an amount equal to the sum of back pay and interest on back pay;

f. **As to Counts II and IV under the FCRA**, compensatory damages for lost benefits, mental anguish, and other such relief in an amount to be determined at trial;

g. **As to Counts II and IV under the FCRA**, punitive damages in an amount to be determined at trial;

h. Attorney's fees and costs, including expert witness fees as allowed by law;

i. All other legal and/or equitable relief to which she is entitled as a matter of law and/or equity;

j. Grant other further relief as being just and proper under the circumstances.

Respectfully submitted,

**MCINTYRE & BERMUDEZ, PLLC**
*/s/ Victor R. Bermudez*
Victor R. Bermudez, Esq.
Florida Bar No. 1010344
*Trial Counsel for Plaintiff*
1520 Royal Palm Square Blvd.
Suite 210
Fort Myers, FL 33919
(P) 239.935.8426
(F) 239.291.6668
victor@mbcounsel.com
karenia@mbcounsel.com